**UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| DATA SCAPE LIMITED,<br><br>      Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>      Defendant. | C.A. No. 6:19-cv-00310<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which plaintiff Data Scape Limited ("Plaintiff," "Data Scape") makes the following allegations against defendant Apple Inc. ("Defendant"):

**PARTIES**

1. Data Scape is a company organized under the laws of Ireland with its office located at Office 115, 4-5 Burton Hall Road, Sandyford, Dublin 18, Ireland.

2. On information and belief, Defendant is Defendant Apple Inc. ("Apple" or "Defendant") On information and belief, Apple is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California 95014. Apple has regular and established places of business in this District, including, at 3121 Palm Way, Austin, Texas 78758 and 2901 S. Capital of Texas Hwy., Austin, TX 78746. On information and belief, Apple can be served through its registered agent, CT Corporation System, 818 W. Seventh Street, Suite 930, Los Angeles, California, 90017.

**JURISDICTION AND VENUE**

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within the Western District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.

5. Venue is proper in this district under 28 U.S.C. § 1400(b). Defendant has established places of business in the Western District of Texas. Defendant is registered to do business in Texas. Upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 10,277,675**

6. Data Scape is the owner by assignment of United States Patent No. 10,277,675 ("the '675 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '675 Patent was duly and legally issued by the United States Patent and Trademark Office on April 30, 2019. A true and correct copy of the '675 Patent is included as Exhibit A.

7. Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '675 patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, Apple's products and services, e.g., Apple iCloud, Apple iTunes and the Apple devices on which they operate (e.g. iPhone, MacBook, iPad), and all versions and variations thereof since the issuance of the '675 Patent ("Accused Instrumentalities").

8. Defendant has directly infringed and continues to infringe the '675 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to its customers.

9. For example, the Accused Instrumentalities infringe Claim 1 (and certain of its dependents) of the '675 Patent. Only Claim 1 and certain of its dependent claims are asserted in this action. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

10. The Accused Instrumentalities include "a communication system including a first apparatus having a first hardware storage medium, and a second apparatus." For example, the Accused Instrumentalities communicate and transfer a document stored on one Apple device (e.g. a MacBook, iCloud Drive) to another Apple device (e.g. an iPhone):



Figure 4-1 Pushing document changes to iCloud

https://developer.apple.com/library/archive/documentation/FileManagement/Conceptual/FileSystemProgrammingGuide/iCloud/iCloud.html#//apple_ref/doc/uid/TP40010672-CH12-SW1.

> **iCloud File Management**
>
> Previous    Next
>
> Use the iCloud Storage APIs to write user documents and data to a central location and access those items from all of a user's computers and iOS devices. Making a user's documents ubiquitous using iCloud means that a user can view or edit those documents from any device without having to sync or transfer files explicitly. Storing documents in a user's iCloud account also provides a layer of security for that user. Even if a user loses a device, the documents on that device are not lost if they are in iCloud storage.
>
> **Important:** The iCloud APIs do not work with garbage collection in macOS. If your existing code uses garbage collection, update your code to use ARC instead.
>
> **Storing and Using Documents in iCloud**
>
> Documents in iCloud provide the central location from which updates can be delivered to a user's computers and iOS devices. All documents must be created on a local disk initially and moved to a user's iCloud account later. A document targeted for iCloud storage is not moved to iCloud immediately, though. First, it is moved from its current location in the file system to a local system-managed directory where it can be monitored by the iCloud service. After that transfer, the file is transferred to iCloud and to the user's other devices as soon as possible.
>
> While in iCloud storage, changes made on one device are stored locally and then pushed to iCloud using a local daemon, as shown in Figure 4-1. To prevent large numbers of conflicting changes from occurring at the same time, apps are expected to use file coordinator objects to perform all changes. File coordinators mediate changes between your app and the daemon that facilitates the transfer of the document to and from iCloud. In this way, the file coordinator acts like a locking mechanism for the document, preventing your app and the daemon from modifying the document simultaneously.

https://developer.apple.com/library/archive/documentation/FileManagement/Conceptual/FileSystemProgrammingGuide/iCloud/iCloud.html#//apple_ref/doc/uid/TP40010672-CH12-SW1.

11.     The Accused Instrumentalities include "a second apparatus comprising a second hardware storage medium configured to store management information of data to be transferred to said first storage medium." As shown from the below screen captures from an iPhone (an example of the second apparatus), the iPhone includes gigabytes of

storage, and can manage the transfer of data from itself to the iCloud Drive and then to another Apple Device (e.g. MacBook). Both the iCloud Drive and the MacBook include storage and are an examples of a first storage medium.



12. The Accused Instrumentalities include "a second apparatus comprising a hardware interface configured to communicate data with said first apparatus." For example, the iPhone is designed to communicate with the iCloud drive over cellular and/or WiFi networks:

Previous   Next

# iCloud File Management

Use the iCloud Storage APIs to write user documents and data to a central location and access those items from all of a user's computers and iOS devices. Making a user's documents ubiquitous using iCloud means that a user can view or edit those documents from any device without having to sync or transfer files explicitly. Storing documents in a user's iCloud account also provides a layer of security for that user. Even if a user loses a device, the documents on that device are not lost if they are in iCloud storage.

> **Important:** The iCloud APIs do not work with garbage collection in macOS. If your existing code uses garbage collection, update your code to use ARC instead.

## Storing and Using Documents in iCloud

Documents in iCloud provide the central location from which updates can be delivered to a user's computers and iOS devices. All documents must be created on a local disk initially and moved to a user's iCloud account later. A document targeted for iCloud storage is not moved to iCloud immediately, though. First, it is moved from its current location in the file system to a local system-managed directory where it can be monitored by the iCloud service. After that transfer, the file is transferred to iCloud and to the user's other devices as soon as possible.

While in iCloud storage, changes made on one device are stored locally and then pushed to iCloud using a local daemon, as shown in Figure 4-1. To prevent large numbers of conflicting changes from occurring at the same time, apps are expected to use file coordinator objects to perform all changes. File coordinators mediate changes between your app and the daemon that facilitates the transfer of the document to and from iCloud. In this way, the file coordinator acts like a locking mechanism for the document, preventing your app and the daemon from modifying the document simultaneously.

7

Figure 4-1 Pushing document changes to iCloud

https://developer.apple.com/library/archive/documentation/FileManagement/Conceptual/FileSystemProgrammingGuide/iCloud/iCloud.html#//apple_ref/doc/uid/TP40010672-CH12-SW1.

13. The Accused Instrumentalities include "a second apparatus comprising a processor configured to detect whether said first apparatus and said second apparatus are connected." For example, an iPhone can detect whether or not it is detected to a connected to the iCloud Drive via a cellular and/or WiFi network:



14. The Accused Instrumentalities include "a second apparatus comprising a processor configured to select certain data to be transferred." For example, the iPhone is configured to allow a user to select the applications that share data with the iCloud Drive:



15. The Accused Instrumentalities include "a second apparatus comprising a processor configured to edit said management information based on said selection without regard to the connection of said first apparatus and said second apparatus." For example, the iPhone is configured to allow a user to select the applications that share data with the

iCloud Drive even when the user is not connected to a cellular or WiFi network or the iCloud Drive (e.g. in Airplane Mode):



16. The Accused Instrumentalities include "a second apparatus comprising a processor configured to compare said management information edited by said processor with management information of data stored in said first storage medium." For example, the iPhone is configured to compare the data already transmitted to the iCloud Drive with the data present in the iPhone Applications that have been selected and transmit new or changed data for in the iPhone Applications (e.g. a new photo that was not previously saved on the iCloud Drive):

11

> iCloud will:
>
> - Sync Calendars
> - SyncSafari Bookmarks (though not display them on the iCloud website)
> - Sync Contacts
> - Sync photos added to or taken on one device onto other devices
> - Access @me.com email
> - Sync iWork documents only between your Mac and iOS5 devices - automatically from iOS devices by by dragging individual documents from a Mac to the iCloud website (and the cannot be re-downloaded until they have been edited on an iOS device)
>
> Each of these can be turned on or off on each device; you cannot selectively sync within one data type - i.e. it's all or no Contacts, not a selection, and so on.

https://discussions.apple.com/thread/3743670?tstart=0

> ### Here's how it works
>
> iCloud Photos automatically keeps every photo and video you take in iCloud, so you can access your library from any device, anytime you want. Any changes you make to your collection on one device, change on your other devices too. Your photos and videos stay organized into Moments, Collections, and Years. And all of your Memories and People are updated everywhere. That way you can quickly find the moment, family member, or friend you're looking for.
>
> Your collection uploads to iCloud each time your device connects to Wi-Fi and your battery is charged. When you have iOS 11 or later, your library updates over cellular too. Depending on your Internet speed, the time it takes for you to see your photos and videos on all of your devices and iCloud.com might vary.

https://support.apple.com/en-sg/HT204264

17. The Accused Instrumentalities include "a second apparatus comprising a processor configured to transmit the selected data stored in said second apparatus to said first apparatus via said hardware interface based on said management information edited by said processor when said processor detects that said first apparatus and said second apparatus are connected based upon a result of the comparison." For example, when the iPhone is connected to the iCloud drive over a cellular and/or WiFi network, it will transfer

the data stored in the applications selected by the user to the iCloud Drive, following the comparison described above:

iCloud will:

- Sync Calendars
- SyncSafari Bookmarks (though not display them on the iCloud website)
- Sync Contacts
- Sync photos added to or taken on one device onto other devices
- Access @me.com email
- Sync iWork documents only between your Mac and iOS5 devices - automatically from iOS devices by by dragging individual documents from a Mac to the iCloud website (and the cannot be re-downloaded until they have been edited on an iOS device)

Each of these can be turned on or off on each device; you cannot selectively sync within one data type - i.e. it's all or no Contacts, not a selection, and so on.

https://discussions.apple.com/thread/3743670?tstart=0

## Here's how it works

iCloud Photos automatically keeps every photo and video you take in iCloud, so you can access your library from any device, anytime you want. Any changes you make to your collection on one device, change on your other devices too. Your photos and videos stay organized into Moments, Collections, and Years. And all of your Memories and People are updated everywhere. That way you can quickly find the moment, family member, or friend you're looking for.

Your collection uploads to iCloud each time your device connects to Wi-Fi and your battery is charged. When you have iOS 11 or later, your library updates over cellular too. Depending on your Internet speed, the time it takes for you to see your photos and videos on all of your devices and iCloud.com might vary.

https://support.apple.com/en-sg/HT204264

18. Defendant has had knowledge of the '675 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '675 Patent.

19. Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and

customary way to infringe the claims of the '675 Patent. Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '675 Patent.

20. For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '675 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '675 Patent. Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '675 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Defendant engaged in such inducement to promote the sales of the Accused Instrumentalities, e.g., through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '675 Patent. Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '675 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '675 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '675 Patent, in violation of 35 U.S.C. § 271(b).

21. For similar reasons, Defendant also infringes the '675 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '675 Patent if such combination occurred within the United States. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware and software components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to combine multiple Teradata servers into an infringing system) outside of the United States

22. Defendant has also infringed, and continues to infringe, claims of the '675 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '675 Patent, and constitute a material part of the invention. Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '674 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '675 Patent, in violation of 35 U.S.C. § 271(c).

23. Defendant also indirectly infringes the '675 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '675 Patent and are

not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '675 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware and software components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendant's own actions or instructions to users in, e.g., combining multiple Teradata servers into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

24. As a result of Defendant's infringement of the '675 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Data Scape respectfully requests that this Court enter:

a. A judgment in favor of Plaintiff that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '675 Patent (the "asserted patent");

b. A permanent injunction prohibiting Defendant from further acts of infringement of the asserted patent;

c. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

d. A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Data Scape, including without limitation, prejudgment and post-judgment interest;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

f. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: May 20, 2019

Respectfully submitted,

*/s/ Marc A. Fenster*
Marc A. Fenster

>
> Marc A. Fenster (CA SBN 181067)
> Email: mfenster@raklaw.com
> Reza Mirzaie (CA SBN 246953)
> Email: rmirzaie@raklaw.com
> Brian D. Ledahl (CA SBN 186579)
> Email: bledahl@raklaw.com
> Paul A. Kroeger (CA SBN 229074)
> Email: pkroeger@raklaw.com
> C. Jay Chung (CA SBN 252794)
> Email: jchung@raklaw.com
> Philip X. Wang (CA SBN 262239)
> Email: pwang@raklaw.com
> **RUSS AUGUST & KABAT**
> 12424 Wilshire Blvd., 12th Floor
> Los Angeles, California 90025
> Telephone: (310) 826-7474
> Facsimile: (310) 826-6991
>
> Attorneys for Plaintiff
> *Data Scape Limited*